# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Richard Knotts,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-0715** (Preston County 07-C-82)

**Donnie Ames, Superintendent,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

# MEMORANDUM DECISION

Petitioner Richard Knotts, by counsel Jeremy B. Cooper, appeals the August 11, 2020, order of the Circuit Court of Preston County denying petitioner's petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mount Olive Correctional Complex, by counsel Patrick Morrisey and Scott E. Johnson, filed a response, and petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court determines that the circuit court failed to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, preventing this Court from conducting a meaningful review of the decision to deny petitioner's request for habeas relief. Consequently, the circuit court's order must be vacated and the case remanded to permit the court to make adequate findings of fact and conclusions of law. Under these limited circumstances, disposition of this matter by memorandum decision is appropriate. *See* W. Va. R.A.P. 21(d). We now vacate the circuit court's order and remand this case for further proceedings consistent with this decision.

In 1990, petitioner was convicted by a jury for the first-degree murder of Robert Barlow ("the victim") and sentenced to life imprisonment without mercy. Jeffrey Bowles, an employee of the serology section of the West Virginia State Police Crime Laboratory ("Crime Lab"), testified at petitioner's trial as to blood evidence collected during the investigation of the case.[1] With regard to a button-up shirt and a flowered print washcloth recovered from petitioner's home, Mr. Bowles testified that the victim's blood was found on those items. Regarding blood found on the floor and

---

[1] Mr. Bowles explained that "the serology section . . . receives and examines physical evidence for the presence of blood, seminal fluids and other body fluids and hair."

door opening of the victim's truck, Mr. Bowles testified that the blood "was [petitioner's] blood, consistent with [petitioner's] blood." Mr. Bowles explained that he made these conclusions by comparing the blood types and certain enzymes contained in the blood discovered on the shirt, washcloth, and truck to the blood of the victim and petitioner.

In 2007, petitioner filed a petition for a writ of habeas corpus in the Circuit Court of Preston County, West Virginia. Counsel was appointed to petitioner, and his counsel filed an amended petition and *Losh* list. Among other things, the amended petition alleged that the State introduced serological evidence at his trial that was false, tainted, or more prejudicial than probative. The amended petition stated that "[a]ny mistakes or correction in the evidence of course could result in a different result in this case." The amended petition asserted that the Court's decision in *In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division* (*Zain III*), 219 W. Va. 408, 633 S.E.2d 762 (2006), gives cause to question the performance of Mr. Bowles.[2] Through the amended petition, petitioner requested that he be permitted to retain an expert to assist in analyzing the serological evidence.

By order entered on April 7, 2008, the circuit court ordered that petitioner, through his counsel, was permitted to "hire experts as needed to obtain and analyze DNA Evidence as needed to properly present Petitioner's claim . . . for Improper use of DNA evidence that is false, tainted or is more prejudicial than probative." Following years of continuances and expert analysis of the available blood evidence, the matter finally came before the circuit court for an evidentiary hearing on October 4, 2019, and January 8, 2020. The Court heard the testimony of four individuals, including petitioner and a serology expert retained by petitioner, Barie Goetz.

Mr. Goetz testified that he reviewed the serological testing performed by the Crime Lab and found numerous deviations in professional standards. He provided opinions concerning the blood scrapings from the victim's truck that were identified at trial as petitioner's blood, the button-up shirt recovered from petitioner's home, and the flowered print washcloth recovered from petitioner's home. With regard to the washcloth, Mr. Goetz concluded that the serological evidence produced at petitioner's trial was fabricated and was the result of "dry labbing." Mr. Goetz explained that "dry labbing" is the creation of results without performing any analysis. Mr. Goetz testified:

---

[2] In 1999, the Court appointed a special judge to supervise an investigation of allegations that serologists at the Crime Lab engaged in intentional misconduct. *Zain III*, 219 W. Va. at 411, 633 S.E.2d at 765. The special judge found that "there [was] not a scintilla of evidence of intentional misconduct on the part of the serologists . . . [a]lthough there were some errors identified in cases reviewed." *Id.* at 412, 633 S.E.2d at 766. The Court adopted this finding. *Id.* at 414, 633 S.E.2d at 768. However, "because of the significant number, frequency, and types of errors . . . discovered in the work of the Crime Lab serologists," the Court enacted certain "safeguards to ensure that prisoners against whom serologists offered evidence receive a thorough, timely, and full review of their challenges to the serology evidence." *Id.* at 415, 633 S.E.2d at 769. Those safeguards included the right to "a full habeas corpus hearing on the issue of the serology evidence," and the appointment of counsel. *Id.*

I examined the wash cloth . . . . Nowhere on that wash cloth are there, A, any markings that would indicate that this is an area that was sampled.

There are not indications of fabric or fibers ever being removed from that wash cloth such as a cutting that you would take to run the enzymes.

There's no indications that a swab was used to remove some type of biological stain that was on the wash cloth, and yet we have results stating that something was found on there; wasn't blood, but we have enzymes detected that are present in blood.

That's very inconclusive -- a very -- it just goes against any type of scientific analysis that these results would be valid . . . yet we have these results linking the victim to this wash cloth found in [petitioner's] house.

Respondent did not contest Mr. Goetz's conclusions.

On August 11, 2020, the circuit court entered an order denying petitioner's request for a writ of habeas corpus. The order included a discussion of the blood scrapings from the victim's truck and the button-up shirt; however, it did not include any findings of fact or conclusions of law concerning the washcloth. Petitioner now appeals the circuit court's order.

On appeal, petitioner argues that the circuit court "simply ignore[ed] uncontroverted expert testimony demonstrating that in 1990, law enforcement completely fabricated serology results on a washcloth supposedly linking the Petitioner to the crime." Petitioner asserts that the circuit court's failure to address the washcloth evidence in the order warrants remanding the case for findings of fact and conclusions of law regarding the fabrication of evidence on the washcloth. Respondent agrees with petitioner, stating that because the circuit court failed to make adequate findings and conclusions concerning the washcloth, this case should be remanded to the circuit court for entry of a new order.

Regarding habeas petitions generally, we have held that "West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law *relating to each contention advanced by the petitioner*, and to state the grounds upon which the matter was determined." Syl. Pt. 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997) (emphasis added); *see also Markley v. Coleman*, 215 W. Va. 729, 734, 601 S.E.2d 49, 54 (2004) ("In deciding to grant or deny relief, circuit courts must make adequate findings of fact and conclusions of law related to the petitioner's habeas corpus allegations."). As to cases involving serological evidence, we have held:

A prisoner against whom a [Crime Lab] serologist, other than Fred Zain,[3] offered evidence and who challenges his or her conviction based on the serology

---

[3] Fred Zain worked as a serologist in the Crime Lab from 1979 through 1989. *Zain III*, 219 W. Va. at 410 n.2, 633 S.E.2d at 764 n.2. In 1993, the Court appointed a special judge to supervise an investigation of allegations that Mr. Zain gave false testimony in criminal prosecutions. *Id.* at 410, 633 S.E.2d at 764. The special judge found that Mr. Zain had "intentionally and systematically [given] inaccurate, invalid, or false testimony or reports," and concluded that his "misconduct was

(continued . . .)

evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right. The circuit court is to review the serology evidence presented by the prisoner with searching and painstaking scrutiny. At the close of the evidence, *the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence* and if the evidence is found to be false, whether the prisoner has shown the necessity of a new trial based on the five factors set forth in the syllabus of *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979).

*Zain III*, 219 W. Va. at 409, 633 S.E.2d at 763, Syl. Pt. 4 (footnote added) (emphasis added). While the circuit court did make findings of fact and conclusions of law concerning the blood scrapings from the victim's truck and the button-up shirt, the circuit court did not make such findings and conclusions concerning the washcloth. Thus, the circuit court has failed to comply with our holdings in *Watson* and *Zain III*.

Typically, this Court reviews an appeal of the denial of habeas relief pursuant to Syllabus Point 1 of *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016), which states,

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

*Anstey*, 237 W. Va. at 412, 787 S.E.2d at 864, Syl. Pt. 1. However, without findings concerning the washcloth, this Court is unable to determine whether the circuit court abused its discretion by denying the habeas petition. *See Province v. Province*, 196 W. Va. 473, 483 n.19, 473 S.E.2d 894, 904 n.19 (1996) ("Where we are provided only legal conclusions unsupported by specific facts . . . a reviewing court simply is unable to determine whether or not the conclusion is an abuse of discretion.").

In *Mullins v. Mullins*, 226 W. Va. 656, 704 S.E.2d 656 (2010), we said that "in cases where there is an absence of adequate factual findings, it is necessary to remand the matter to the lower court to state or, at a minimum, amplify its findings so that meaningful appellate review may occur." *Id.* at 662, 704 S.E.2d at 662; *see also Province*, 196 W. Va. at 483, 473 S.E.2d at 904 ("Where the lower tribunal[] . . . mak[es] only general, conclusory or inexact findings[,] we must vacate the judgment and remand the case for further findings and development."); *Dennis v. State of W. Va., Div. of Corr.*, 223 W. Va. 590, 593, 678 S.E.2d 470, 473 (2009) ("We previously have

---

so egregious that it should be considered newly discovered evidence in any criminal prosecutions in which Zain offered evidence." *Id.* The Court adopted the special judge's finding and conclusion and implemented the special judge's report in *In the Matter of an Investigation of the West Virginia State Police Crime Laboratory, Serology Division (Zain I)*, 190 W. Va. 321, 438 S.E.2d 501 (1993).

recognized that 'in most circumstances the failure to make specific findings of fact and conclusions of law regarding an issue raised in habeas proceedings . . . necessitate[s] a remand[.]'" (quoting *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 19, 528 S.E.2d 207, 215 (1999))); *State v. Joseph C.*, No. 19-0584, 2020 WL 5269751, at *2 (W. Va. Sept. 4, 2020) (vacating the circuit court's order and remanding the case upon finding that the circuit court's order lacked "findings of fact and conclusions of law sufficient to allow meaningful appellate review"). Accordingly, we vacate the circuit court's August 11, 2020, order and remand this matter to the circuit court with directions for the circuit court to set forth findings of fact and conclusions of law sufficient to allow meaningful appellate review in the event that petitioner elects to file an appeal.[4]

For the foregoing reasons, we vacate and remand.

Vacated and remanded.

**ISSUED:** January 18, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice Tim Armstead

---

[4] Petitioner raised additional assignments of error in this appeal involving the merits of the circuit court's decision; however, because the circuit court's order is, at present, inadequate to allow meaningful appellate review, we shall not address those issues at this time.